219 So.2d 180 (1969)
Higney J. MARCANTEL et ux., Plaintiffs-Appellants,
v.
AETNA CASUALTY AND SURETY COMPANY, Defendant-Appellee.
No. 2589.
Court of Appeal of Louisiana, Third Circuit.
February 14, 1969.
Rehearing Denied March 12, 1969.
Cormie & Morgan, by Nathan A. Cormie, Lake Charles, for plaintiffs-appellants.
Hall, Raggio, Farrar & Barnett, by Louis D. Bufkin, Lake Charles, for defendant-appellee.
Stockwell, St. Dizier, Sievert & Viccellio, by Fred H. Sievert, Jr., Lake Charles, for defendant-appellee.
Before TATE, FRUCÉ and MILLER, JJ.
TATE, Judge.
Higney Marcantel and his wife were driving westward when they collided with *181 an eastbound 1963 Corvair driven by Virginia Babineaux. The Marcantels sue the liability insurer (Aetna) of the Corvair. The plaintiffs appeal from the dismissal of their suit.
The Babineauxs sued Marcantel and his liability insurer for damages arising out of the same accident. The Babineaux suit was consolidated with the present one for trial and for appeal. The issues in the two consolidated suits are identical. See Babineaux v. Marcantel, La.App., 219 So. 2d 187, decided this date.
The trial court concluded that the preponderance of the evidence showed that the head-on collision had occurred because either the Marcantel or the Babineaux car was across the center line. The Marcantel witnesses testified that the Babineaux vehicle had crossed into their lane, while the Babineaux witnesses testified that it was the Marcantel vehicle which protruded into its wrong lane.
The trial court could not, however, determine which set of witnesses testified accurately. The court found discrepancies in the testimony of one set of witnesses, and a discrepancy between the physical facts and the testimony of the other set of witnesses. Being unable therefore to determine that a preponderance of the evidence proved negligence of either driver, the trial court dismissed both the Babineaux suit against Marcantel and the present Marcantel suit against Aetna, the Babineaux liability insurer.
We find that our trial brother erred in dismissing both suits and in failing to apply, under the circumstances of the present case, the principle set forth by Nelson v. Zurich Insurance Co., 247 La. 438, 172 So.2d 70, 72:
"* * * [When] the opposed versions are irreconcilable, [the court] must resort to the application of the well recognized rule that: `Where witnesses differ, the courts should reconcile, if possible, the apparent contradictions their testimony presents. If this cannot be done, then the probabilities or improbabilities of their respective statements must be considered in the light of their capacity, opportunity or incentive for observation, the amount of corroboration, if any, and the degrees of proof required.'"
Under the present facts, a head-on collision caused the damage for which recovery is sought in the consolidated suits. The essential issue is, where on the roadway did the accident occur?:
Under the Marcantel version, it occurred in the Marcantel (westbound) lane, so the cause of the accident is Mrs. Babineaux's negligence in being in the wrong lane. Under the Babineaux version, the impact occurred in the Babineaux (eastbound) lane, so that the cause of the accident is Mr. Marcantel's negligence in traveling over the center of the roadway. Rizley v. Cutrer, 232 La. 655, 95 So.2d 139; Breaux v. Valin, La.App. 3d Cir., 138 So.2d 405.
The evidence shows that the accident occurred in Lake Charles on McNeese Street just after 11:00 P.M. McNeese is a concrete roadway, 32 feet wide, running eastwest. It does not have a painted center line, but a narrow expansion joint separates the eastbound and westbound lanes.
Prior to the accident, the plaintiff Marcantel was driving his Plymouth westward, accompanied by his wife and Mr. and Mrs. Joe Benoit. From the opposite direction were approaching Mrs. Virginia Babineaux driving a black Corvair, and her husband, driving a 1957 aqua (blue-green) Chevrolet.
The plaintiff Marcantel testified that the accident was caused when the Babineaux Corvair suddenly pulled into his path to pass a forward car, which front car he believed to be the aqua Chevrolet driven by Mr. Babineaux. Mrs. Marcantel and the Benoits corroborated their driver's testimony that the accident occurred when the Corvair suddenly pulled out into Marcentel's lane to pass another eastbound vehicle. *182 All of these witnesses were positive from their own observation that the Marcantel vehicle was in its right lane when the accident was so caused.
On the other hand, the Babineauxs testified that they remained always in their own eastbound lane. They testified that the black Corvair driven by the wife had at all times preceded the aqua Chevrolet driven by the husband. However, neither of the Babineauxs saw the accident, since (they testified) they each happened to be glancing to their right when the impact occurred.
In evaluating the credibility of the witnesses, the trial court expressly stated its impression that the Babineauxs had testified with intended credibility. On the other hand, the trial judge felt he could not give great weight to the testimony of the Marcantels and the Benoits, partly because of numerous discrepancies in their testimonymainly relating to the amount the two couples had had to drink during the three previous hours together, when they had enjoyed a seafood dinner and then gone dancing for an hour or so.
Primarily, the trial court did not accept the version of the accident to which the Marcantels and their passengers testified, because it could not under such version account for the Marcantel Plymouth striking the Chevrolet after the impact with the Corvair (as was established), if indeed the Chevrolet was preceding and being passed by the Corvair immediately before the first impact, as the Marcantels and Benoits believed.
On the other hand, the trial court could not accept the testimony of the Babineauxs indicating that the accident probably happened in their lane, because the physical debris from the accident was largely in the Marcantel lane, suggesting that the impact must have occurred there.
We may at this point state that we believe the physical evidence greatly preponderates to this effect. In the Marcantel lane was left the predominant portion of the glass and oil and gasoline leaking resultant from the impact and sudden rupture of automobile parts caused by the impact between the Babineaux Corvair and the Marcantel Plymouth.
The suggestion that the liquid residual in the westbound lane came from a fire-truck after the accident, rather than from the Corvair's oil and gas lines, is disproved by the uncontradicted testimony that the fire-equipment was not used to wash down the gasoline until after the police photographs were taken. Likewise, markings in the Babineaux lane are, we believe, more probably accounted for by the collapse of the Marcantel bumper an instant or so after the impact, when the Marcantel vehicle was swung leftward into the Babineaux lane, as the Corvair likewise pivoted leftward further into the Marcantel lane.
We consider the physical facts as strongly corroborative of the Marcantel testimony that the impact occurred because the Babineaux Corvair veered into the Marcantel lane. Likewise, we note the following: 1) The testimony of the Marcantels from the moment of the accident, during various investigative statements, and at the trial was consistent in main outline that the accident was caused when the Corvair suddenly veered into their lane (despite discrepancies because of inadequacies of sudden observation of an unexpected emergency, and also because of language difficulties, since the Marcantels and Benoits were more at home in French; 2) On the other hand, neither of the Babineauxs admitted to seeing the impact or knowing anything of the accident, since they both happened to be glancing to their right at that instant or for a second or so before (although they were both positive that both Babineaux vehicles were in their right lane).
The trial court did not evaluate the credibility of the Marcantels and Benoits favorably, partly because of discrepancies which mostly, however, went to the amount of beer the parties had consumed before the accident (as to which, regrettably, it *183 is not uncommon for witnesses to be less than forthright).
Chiefly, however, the trial court felt unable to accept their testimony because he could not reconcile the version of Mr. Marcantel that the Corvair had pulled out from behind the preceding Chevrolet driven by the Babineaux husband to pass it. After the impact, this Chevrolet was struck and scraped along its left side by the left front end of the Marcantel Plymouth. The trial court felt this to be impossible if the Chevrolet were forward (east) of the Corvair at the time of the impact (as the Babineauxs testified), since then the Marcantel Plymouth could not have touched it as it proceeded westward past the Corvair. (If passing the Chevrolet, the Corvair would be either between the Plymouth and the Chevrolet, or else behind or west of the Chevrolet.)
As to this circumstance, however, a close examination of the testimony of the Marcantels and Benoits shows the following: While all four were positive that the Corvair had pulled out to pass some forward car, actually three of them saw only the headlights of oncoming eastbound cars, with the second car pulling out to pass a first car (which first was not necessarily Mr. Babineaux's Chevrolet).[1] Likewise, although the Marcantel driver confusingly testified that the forward car was the husband's Chevrolet, he also felt that after the impact the old Chevrolet was behind the Corvair, Tr. 191, and he also admitted having made prior statements that this Chevrolet was behind the Corvair at the time of the impact, Tr. 189-90.
We think the more probable explanation of the confusion and seeming discrepancy in Mr. Marcantel's testimony is simply that he and the other witnesses could not be expected to note and recollect the make and looks of the lead car of an opposing lane of traffic innocently approaching. It may well be that the forward vehicle which the Corvair veered out from behind is an unknown vehicle of a stranger to this litigation, as counsel for the Marcantels suggests. (And we note that Mrs. Babineaux, when asked if there was a vehicle preceding her in her lane, simply replied "I don't remember * * * It's possible." Tr. 324.)
At any rate, without deviation the version of Marcantel and his passengers at the trial and over the months before, including in the sudden moments immediately after the accident, is that the accident resulted when the Corvair suddenly pulled or veered into his path for the purpose of passing a front vehicle. The physical evidence preponderantly corroborates this testimony, while Mrs. Babineaux and her husband testify only that they do not know how the impact occurred and that they did not see it.
In our opinion, the plaintiffs Marcantel have preponderantly proved that the accident happened while they, on their right side of the road, were struck when the Corvair suddenly veered into their lane. As summarized by us in Gassiott v. Gordey, La.App. 3 Cir., 182 So.2d 170, 175: "By a preponderance of evidence is meant simply, evidence which is of greater weight, or more convincing, than that which is offered in opposition to it; that is, evidence which as a whole shows that the fact or causation sought to be proved is more probable than not. Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276; Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395; Perkins v. Texas & New Orleans Railroad Company, 243 La. 829, 147 So.2d 646. This proof may be made not only by direct evidence, but also by circumstantial evidence which excludes other reasonable hypotheses `with a fair amount of certainty.' Naquin v. Marquette Casualty Company, supra." See also, Sanders, The Anatomy of Proof in Civil Actions, 28 La. L.Rev. 297 (1968).
*184 The evidence therefore proves that this sudden negligent swerve of the Babineaux Corvair was the sole proximate cause of the accident. Even assuming that Marcantel was not entirely sober due to beers consumed during the evening, any negligence of himself or his passengers in that regard is not causally connected with the accident. See Rizley v. Cutrer, 232 La. 655, 95 So.2d 139, 143 and Viator v. Grain Dealers Mutual Ins. Co., La.App.3d Cir., 182 So.2d 165.
The defendant Aetna, as the liability insurer of the operation of the Corvair, is liable for the damages sustained by the plaintiffs.
Quantum.
Mrs. Marcantel suffered a cervical sprain producing objective symptoms for approximately six months, as well as disability to do housework for about two weeks. She also suffered a severe blow to her head, which produced a large bump and a black eye of about three weeks duration. Fortunately, she has sustained no residual effects. For these injuries, we believe an award of $2,000 general damages may be appropriate. See, e. g., Fontenot v. Snow, La.App. 3d Cir., 149 So.2d 172; Doyle v. McMahon, La.App. 4th Cir., 136 So.2d 89.
Mr. Marcantel sustained a slashed elbow, and both his knees were bruised. He did not require hospitalization or medical treatment, and he was able to report to work on the day following the accident. For these injuries, we believe an award of $250 general damages will be appropriate. See, e. g., Vander v. New York Fire & Marine Underwriters, Inc., La.App. 3d Cir., 149 So.2d 635; August v. Delta Fire & Casualty Co., La.App. 1st Cir., 79 So.2d 114.
Mr. Marcantel has also proved special damages in the following amounts:
a. Total loss of his 1966 Plymouth, $2,000. (A competent appraiser valued it at $2,200 before the November, 1967 accident, and with salvage value of only $200 afterwards; this testimony is unconvincingly sought to be impeached by a witness who attempted to appraise the destroyed automobile from photographs, and without knowing the prior condition or accessories of the vehicle);
b. Medical expenses for medical treatment and examination for medical purposes of wife: $145 (Dr. Hargrove, $54, Tr. 75, 89; Dr. Morin, $85, Tr. 312; Dr. Mayes, $6.00, Tr. 63);
c. Medicines prescribed, $17.98 (Tr. 51);
d. Total: $2,162.98 special damages.
In summary, then, Mr. Marcantel is entitled to an award of $250 general damages and $2,162.98 special damages, whereas Mrs. Marcantel is entitled to an award of general damages of $2,000. (The record shows various items by way of taxable court costs were expended, but we think the preferable way to tax these will be by rule in the trial court, LSA-C.C.P. Art. 1920, since neither record nor briefs contain any organized summary thereof.)

Decree.
For the foregoing reasons, we reverse the judgment of the trial court dismissing the plaintiffs' suit. It is further ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiff Higney J. Marcantel and against the defendant, the Aetna Casualty and Surety Company, holding it liable in the sum of Two Thousand Four Hundred Twelve and 98/100 ($2,412.98) Dollars; and further that there be judgment herein in favor of the coplaintiff, Mrs. Louella L. Marcantel, wife of Higney, against the said defendant in the sum of Two Thousand and no/100 ($2,000.00) Dollars; both awards to bear legal interest from date of judicial demand until paid. The defendant-appellee is cast *185 with all costs of these proceedings and of this appeal.
Reversed and rendered.
TATE, Judge (concurring).
The writer wishes to amplify a reason for the result reached, as expressing the views of himself and his brother FRUGE.
Under the en banc conference consultation process of this court, the rationale below set forth is not included in the decision, since a majority of the entire court is not convinced that, as expressed, it represents a binding principle of law. (The entire court does agree with the rationale and result of the majority opinion.) The concurring judges, however, believe that the principle below set forth, as deduced from the opinions of our state Supreme Court, more adequately explains the basis of this decision and of the reversals by the high court of several courts of appeal decisions which did not apply such principle.
To reiterate the facts: A headon collision occurred, and it undoubtedly occurred over the center line of the highway. The determinative fact was the place of the accidenton which side of the center line was the impact? Upon determining this fact, simultaneously some parties win and some parties lose. Under the record, some parties or the other are entitled to prevail, once this essential juridical fact is determined, this juridical fact which undoubtedly took place.
The trial court was unable to determine which set of parties could prevail, because it felt unable as a matter of credibility evaluation to decide which set of witnesses is truthful. The failure for this reason to resolve this dispute constitutes, in the opinion of the concurring judges, an error of law.
The Supreme Court decisions below cited enunciate the following principle, which is applicable to the present circumstances: When opposing versions of an accident are given at a trial, and when under either version at least some of the parties to the trial must necessarily recover, the decisional function requires the trier to adjudicate the determinative fact issue which will resolve which party recovers. Under such circumstances, the trier of fact commits error of law when it rejects all claims by refusing to decide which version is correct or to determine the central fact-issue simultaneously essential to the recovery by one party and to the denial of recovery to the other.
See: Brown v. Southern Farm Bureau Casualty Ins. Co., 248 La. 943, 183 So.2d 313 (reversing 177 So.2d 597, 3 Cir., which over dissent failed to apply this principle); Nelson v. Zurich Insurance Company, 247 La. 438, 172 So.2d 70 (reversing 165 So.2d 489, 2 Cir., which was critically noted for failing to follow this principle, 39 Tul.L. Rev. 376); Derouen v. American Employers Insurance Co., 240 La. 486, 123 So.2d 896 (reversing 118 So.2d 522, 1 Cir., which over dissent failed to apply this principle).
The clearest summary of the fact-trier's duty in such circumstances is expressed by the Nelson opinion, which states: "* * * The opposed versions are irreconcilable, hence we must resort to the application of the well recognized rule that: `Where witnesses differ, the courts should reconcile, if possible, the apparent contradictions their testimony presents. If this cannot be done, then the probabilities or improbabilities of their respective statements must be considered in the light of their capacity, opportunity or incentive for observation, the amount of corroboration, if any, and the degrees of proof required.'" 172 So.2d 72.
Since the Nelson decision, the courts of appeal have consistently applied the principle above set forth when presented by opposing fact versions at a trial, under either of which at least some party must receive favorable judgment. Wheeler v. Simonton, La.App. 2 Cir., 215 So.2d 359; Treadway v. State Farm Insurance Co., La.App. 4 Cir., 204 So.2d 609; Carrington v. New *186 York Fire & Marine Underwriters, Inc., La.App. 2 Cir., 198 So.2d 447. (When this court did not do so in Brown v. Southern Farm Casualty Ins. Co., 177 So.2d 597, it was reversed, 248 La. 943, 183 So.2d 313.)
We do not regard the principle as any less applicable because arising in the context of a trial of consolidated suits, rather than in opposing claims asserted in a single suit. For the reason of the principle is grounded upon the proper exercise of the decisional function to dispose of litigation.
The function of the courts is to settle the disputes of the parties presented by litigation brought for that purpose. This purpose of litigation to settle disputes requires an adjudication of which of two irreconcilable versions is correct, when either one party or the other must necessarily win, depending on which verision is correct. In these circumstances the adjudicative function is not fulfilled when the trier calls it a tie and lets neither party win. (Similarly, the trier cannot refuse to decide a close question of law, resolution of which is necessary to adjudicate which party must win, when only by a failure to decide this issue may neither party have the merits of his claim decided favorably, and when one party or the other must necessarily prevail if the legal issue is resolved.)
The principle finds full application under the present facts. A head-on collision caused the damages for which recovery is sought in the consolidated suits. Essentially, the issue is where on the roadway did the the accident occur: If on one side of the center line, one set of plaintiffs prevail; if on the other, the other wins; even if both vehicles protruded across the center-lane into the other's lane, so that both drivers were jointly negligent, then certain of the plaintiffs are entitled to recover from the opposing side, since they are innocent of any fault contributing to the accident.[1]
By refusing to decide where on the roadway the first impact occurred, no party recovers even though necessarily at least some of the parties are entitled to recover no matter where this impact took place. By reason of the principle above discussed, the adjudicative function imposed upon the deciding tribunal does not permit it to avoid determining this essential fact. We therefore believe that the present trier of fact committed error of law in not resolving the essential fact-determination without which the central issue presented by neither party's suit is decided.
For these reasons, we concur in the result reached, but we believe the above principle to express the more appropriate rationale for our decision.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] See testimony of Mrs. Benoit: Tr. 323, 332, 340, 342-43, 345; of Joseph Benoit: Tr. 349, 358-59; of Mrs. Marcantel: Tr. 248, 252, 261 ("There was more than two or three cars. I can't recall, but I could see headlights in the opposite lane".)
[1] In the companion Babineaux suit, one of the co-plaintiffs is the father of Mrs. Babineaux, who had loaned the car to her for her personal purposes, who was not present, and who had no control of the vehicle. It is well established that the negligence of a vehicle's borrower cannot be imputed to the car's owner, and thus that the owner may recover from the negligent driver of another vehicle colliding with the borrowed car, even if the borrowing driver's negligence also contributes to the accident. Dixie Drive-It-Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298, syllabus 1.

Likewise, in the present suit, the co-plaintiff wife of Marcantel, as a passenger, may recover despite her husband-driver's negligence, since ordinarily the driver's negligence is not imputed to a passenger. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149. Although it is charged that the wife's contributory negligence or assumption of the risk bars her recovery, the evidence falls short of preponderantly proving this affirmative defensean issue we do not, however, reach in our disposition of the case, since we find that no negligence on the part of Marcantel, the plaintiff-driver, contributed to the accident.