GUIDRY, Judge.
This suit arose out of a vehicular collision on June 11, 1980, in which a vehicle driven by Lloyd Pickens rear-ended an automobile occupied by plaintiffs, Doris and Robert Delaney. Plaintiffs named as defendants Pickens, his employer, Kimbel Trucking Company, and Empire Insurance Company, the latter’s insurer.
Prior to trial, plaintiffs voluntarily dismissed Lloyd Pickens and Kimbel Trucking Company from the lawsuit reserving their rights against Empire Insurance Company (Empire). Subsequently, a stipulation was entered into by the litigants to the effect that Empire provided a $500,000.00 single limit policy of automobile liability insurance on the vehicle being driven by Pickens which was in full force and effect on June 11, 1980. Furthermore, Empire admitted that Pickens was within the course and scope of his employment at the time of the accident and that the accident was solely the fault of Pickens.
On January 24, 1984, jury selection began in this case and, on January 27, 1984, the jury returned a verdict in favor of plaintiffs as follows:
Doris Delaney
Special Damages $ 1,100.00
General Damages 22,000.00
Total 23,100.00
Robert Delaney
Special Damages $11,550.00
General Damages 43,350.00
Total 57,900.00
Judgment was rendered and signed accordingly. Empire has appealed urging that the jury awards are excessive.
DORIS DELANEY
The record establishes that Mrs. Delaney visited Dr. .William J. Defee, III, on June 12, 1980, one day after the accident. Mrs. Delaney complained of pain in her right arm and in the neck area. Dr. Defee diagnosed Mrs. Delaney’s injury as a cervical strain and/or an aggravation of an arthritic condition and prescribed medication to alleviate the pain. On June 26, 1980, Dr. *1175 Defee re-examined Mrs. Delaney and found her to be in severe pain. Mrs. Delaney was admitted to the Doctors Hospital of Tioga where she remained until June 28, 1980. During her stay in the hospital, Mrs. Delaney was given physical therapy and was treated with anti-inflammatory drugs. On July 5, 1980, Mrs. Delaney returned to Dr. Defee’s office complaining of severe chest pains. Alarmed at the possibility of the onset of a heart attack, Dr. Defee admitted Mrs. Delaney to the hospital. After conducting numerous medical tests, Dr. Defee concluded that Mrs. Delaney’s chest pains were due to a hiatal hernia. According to Dr. Defee, the hernia condition was unrelated to the automobile accident. Although Mrs. Delaney had further check-ups with Dr. Defee, the only other visit connected with the cervical strain and/or aggravation of her arthritic condition was a visit on October 20, 1980. On the October 20th visit, Dr. Defee recommended to Mrs. Delaney that she wear a soft cervical collar. Dr. Defee saw Mrs. Delaney on other occasions during the subsequent months, however, these visits were connected with Mrs. Delaney’s unfortunate development of cancer. Dr. Defee testified that Mrs. Delaney did not indicate any further neck discomfort on visits after October 20, 1980.
After reviewing this evidence along with the medical bills introduced into evidence, we find that the jury’s award of $1,100.00 in special damages to Mrs. Delaney was excessive. Our review reflects that only $636.60 of the documented medical expenses were related to the injuries caused by the accident. The remaining medical bills pertain to the hiatal hernia or Mrs. Delaney’s complaints of hoarseness, which were apparently triggered by her development of cancer. Clearly, these medical bills were unrelated to the accident and, therefore, are not recoverable. Hence, the special damage award to Mrs. Delaney will be reduced to the sum of $636.60.
Regarding Mrs. Delaney’s award of general damages, Empire complains that it too is excessive. Empire avers that there is absolutely no medical evidence to support Mrs. Delaney’s continued complaints of pain at the time of trial. Mrs. Delaney sought no medical treatment concerning her neck and arm pain after the October 20, 1980, visit to Dr. Defee. Furthermore, Empire posits that the jury felt a great deal of sympathy for Mrs. Delaney, since at the time of trial, she was severely ill due to her development of cancer, and this sympathy caused the jury to lose sight of its duty and award a sum greater than was necessary solely on the basis of this sympathy.
Dr. Daniel Kingsley, an orthopedic surgeon, examined Mrs. Delaney on March 2, 1981, at the request of Empire. Dr. Kings-ley noted several discrepancies in her complaints. He stated that her complaints did not correspond to any particular type of nerve or muscle injury. Moreover, the muscles in her right arm showed no signs of atrophy which, according to Dr. Kings-ley, one would ordinarily expect considering Mrs. Delaney’s testimony that she had lost the use of her arm because of the excruciating pain. Dr. Kingsley suspected that Mrs. Delaney was attempting to impress him with her complaints.
Mrs. Delaney, who was 52 years old at the time of the accident, testified that she has endured a great deal of pain since the accident. The severe pain has limited her ability to fulfill household chores and engage in her hobbies, such as crocheting. Other members of her family, as well as friends, corroborated Mrs. Delaney’s testimony. These witnesses testified that Mrs. Delaney has suffered greatly from the injuries sustained in the accident and continued to suffer at the time of trial. Also, Dr. Defee noted that he found Mrs. Delaney’s complaints of pain to be genuine.
Mrs. Delaney testified that she did not seek further medical treatment for her neck and arm pain because, while the pain was quite severe, the knowledge and resulting anxiety surrounding the discovery that she had cancer overshadowed the pain. Additionally, Mrs. Delaney did not find the treatments prescribed by Dr. Defee to be *1176 particularly helpful and, thus, she saw no point in pursuing such treatment.
It is well settled that the jury has wide discretion in determining the appropriate amount of damages to be awarded. Before a court of appeal can disturb a quantum award, the record must reveal that the jury abused its much discretion, and then the award is to be amended by lowering or raising it to the highest or lowest point which is reasonably within the discretion of the court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Green v. Rollins, 406 So.2d 318 (La.App. 3rd Cir.1981).
It is quite evident that the jury was not impressed with the opinion of Dr. Kingsley. Dr. Kingsley only examined Mrs. Delaney on one occasion and the examination only lasted a little over an hour. The jury, no doubt, was impressed with the testimony of Dr. Defee, Mrs. Delaney’s personal physician, who found Mrs. Delaney’s complaints of pain to be genuine. Admittedly, Mrs. Delaney sought no medical treatment for her neck and arm pain after October 20, 1980, however her reason for not doing so (development of cancer) appears to be quite plausible. Although we consider the general damage award of $22,000.00 to Mrs. Delaney to be on the high side, we cannot say that the jury abused its wide discretion.
ROBERT DELANEY
Mr. Delaney was brought to the emergency room at St. Francis Cabrini Hospital minutes after the rear-end collision took place. Mr. Delaney was given medication for his complaints of lower back pain and sent home. The following day, June 12, 1980, Mr. Delaney’s pain had not subsided so he sought medical attention from Dr. Defee. After examining Mr. Delaney, Dr. Defee admitted him to the Doctors Hospital of Tioga where he remained until June 28, 1980. During his stay in the hospital, Mr. Delaney was treated with muscle relaxers, anti-inflammatory drugs and physical therapy.
Over the next two years, Mr. Delaney was treated by a number of physicians for his back ailment. Finally, in April of 1982, Mr. Delaney checked into the Diagnostic Center Hospital in Houston, Texas. Dr. Enrigue Raso, a neurosurgeon, recommended surgery to Mr. Delaney after examining the results of a myelogram performed on him.
According to Dr. Raso, the myelogram indicated a narrowing of the lumbar spaces at two levels, L2-3 and L3-4, and also scar tissue from previous back surgeries. On May 4, 1982, Dr. Raso performed a lami-nectomy on Mr. Delaney. Fragments of an extruded disc and scar tissue were excised at the L4-5 level, additionally, nerves in this region were freed by a procedure known as a foraminotomy. Dr. Raso explained that an extruded disc means that a fragment of the disc has come out of place. Dr. Raso observed that Mr. Delaney also had spinal stenosis, which is a narrowing of the spine. Dr. Raso opined that the vehicular collision of June, 1980, did not cause the pathology he observed in Mr. Delaney but it could very well have made it symptomatic.
Mr. Delaney had two laminectomies performed on him in 1976. The laminectomies were the result of a serious back injury sustained by him while employed by the City of Alexandria. The injury left him permanently disabled.
Empire argues, on appeal, that the surgery conducted by Dr. Raso was for a condition which was caused by his injury in 1976, not the June, 1980 accident.
Undoubtedly, Mr. Delaney’s back problems do relate to the injury of 1976. However, as noted by Dr. Raso, Mr. Delaney’s complaints of severe pain did not occur until after the 1980 accident, which suggests that the 1980 accident made the condition symptomatic. Although Mr. Delaney did experience some back pain prior to June, 1980, the pain was much more severe after the accident.
According to Mr. Delaney, the 1976 injury severely restricted his activities but he was able to fish, camp, do a little yard *1177 work and travel. However, Mr. Delaney added that subsequent to the 1980 accident, he has been unable to engage in any of these activities because of the severe pain he must endure. Members of Mr. Delaney’s family corroborated his testimony in this connection.
In light of the jury’s wide discretion in quantum awards, we cannot say that the jury’s award of $46,350.00 in general damages to Mr. Delaney was an abuse of that discretion. Moreover, there is ample evidence in the record to support the jury’s award of $11,550.00 in special damages.
For the reasons assigned, we amend the judgment of the trial court to reduce the special damage award to Mrs. Delaney to the sum of $636.60. In all other respects, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED AS AMENDED.